

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

SDD
F. #2013R00278

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 24, 2015

By Hand and ECF

Honorable Allyne R. Ross
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Rex Maralit
      Criminal Docket No.  13 CR 534  (ARR)

Dear Judge Ross:

  The government submits this letter in connection with the defendant's sentencing, which is scheduled for March 27, 2015.  For the reasons set forth below, given the very serious nature of the crime at issue, the government respectfully requests that the Court impose a sentence sufficient to promote respect for the law and to provide adequate deterrence.  The government concurs with the Probation Department that the defendant's adjusted offense level is 25, which provides for an advisory Guidelines range term of imprisonment of between 57 and 71 months.  Based on the totality of the circumstances in this case, including the defendant's limited efforts to assist the government after his arrest, the government does not oppose a modest downward variance.

I. **Background**

  As set forth in the Presentence Investigation Report ("PSR"), on June 12, 2014, the defendant pleaded guilty before Your Honor to Count Two of a four-count indictment, charging that between January 2009 and September 2013, the defendant, along with his brothers Ariel Maralit and Wilfredo Maralit, exported from the United States a variety of military-style firearms along with high-capacity magazines and accessories for

those weapons, without first obtaining a license from the State Department. (PSR ¶ 1). A license was required because the weapons were controlled pursuant to the United States Munitions List. See 22 U.S.C. § 2778.

The defendant is a naturalized U.S. citizen, born in the Philippines, and was a member of the New York City Police Department ("NYPD") during the relevant time frame. (PSR ¶ 7). At times, the defendant demanded discounts from firearms dealers to obtain weapons and ammunition in the United States based on his status as a law enforcement officer. (Id.). The types of firearms the defendant and his accomplices exported included the Barrett .50 caliber long-range semi-automatic rifle, the FN "SCAR" assault rifle, various versions of the AR15 rifle (similar in operation to the standard service rifle of the U.S. government) and high-capacity FN 5.7mm semi-automatic pistols, which fire a cartridge that was specifically designed to penetrate body armor. (PSR ¶ 9). In addition, the defendant exported a variety of high-capacity magazines and firearms components. (PSR ¶ 10). The defendant was arrested at One Police Plaza, where he worked, on September 5, 2013. (PSR ¶ 12). He was subsequently released on bond and has been fully compliant with the terms of his release. The defendant's brother Wilfredo, who was a Customs and Border Protection Officer during the relevant time frame, also pleaded guilty. His third brother, Ariel, resides in the Philippines and remains a fugitive.

## II. Applicable Law

### A. Imposition of Sentence

It is settled law that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted).

Title 18, United States Code, Section 3553(a) provides, in part, that a sentencing Court shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]

2

>   (2) the need for the sentence imposed--
>
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>   (B) to afford adequate deterrence to criminal conduct;
>
>   (C) to protect the public from further crimes of the defendant; and
>
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

It is well-settled that, at sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, Title 18, United States Code, Section 3661 expressly provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Notably, "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." Gall, 552 U.S. at 50 n.6. Thus, the Court must first calculate the applicable Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence, taking into consideration all relevant information.

### III.    Guidelines Calculation

As set forth in the PSR, the defendant's total adjusted offense level is 25. (PSR ¶¶ 17-27). The Guidelines are calculated as follows:

| | |
|---|---:|
| Base Offense Level: (2M5.2(a)(1)) | 26 |
| Plus: Abuse of Public Trust (3B1.3) | +2 |
| Less: Acceptance of Responsibility (3E1.1) | - 3 |
| Adjusted Offense Level: | <u>25</u> |

Given that the defendant falls within Criminal History Category I, the defendant's applicable advisory Guidelines range is 57 to 71 months' imprisonment. (PSR ¶ 65). As set forth in the defendant's sentencing submission, the defendant objects to the application of a two-level enhancement pursuant to Guidelines Section 3B1.3.

## IV.  Sentencing Analysis

The defendant faces a statutory range of imprisonment of between 0 and 20 years' imprisonment, pursuant to Title 22, United States Code, Section 2778(c). (PSR ¶ 74). Before imposing a sentence within that statutory range, the Court should first determine the correct Guidelines range. Here, the government agrees with the Probation Department that the appropriate adjusted offense level is 25.

### A.  The Probation Department Accurately Calculated the Applicable Advisory Guidelines Range

As did the government in its plea estimate, the Probation Department applied an enhancement pursuant to Section 3B1.3 for abuse of public trust. Section 3B1.3 provides:

> If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic. If this adjustment is based upon an abuse of a position of trust, it may be employed in addition to an adjustment under § 3B1.1 (Aggravating Role); if this adjustment is based solely on the use of a special skill, it may not be employed in addition to an adjustment under § 3B1.1 (Aggravating Role).

U.S.S.G. § 3B1.3. The enhancement may be applied to a law enforcement officer where factually appropriate. See, e.g., United States v. Ferby, 108 Fed. Appx. 676, 682 (2d. Cir. 2004) ("The district court did not commit clear error in concluding that there was a 'reasonable certainty' that Parker would have used his position as a police officer to further his own drug-dealing activities." (internal citation omitted).

Here, evidence discovered during the investigation indicates that the defendant used his NYPD credentials to obtain firearms and discounts on firearms that were subsequently exported unlawfully, and even wore his police uniform during at least one of his visits to an out-of-state gun dealer. The defendant also provided his NYPD shield

number for use on a federal form he was required to execute in connection with the purchase of several rifles, which he later exported.

In addition, the defendant purchased a Barrett .50 caliber semi-automatic rifle and other military-style weapons for export from out-of-state firearms dealers, who likely would have subjected the defendant to greater scrutiny or even refused the sale absent his police identification. The jurisdiction listed on the defendant's driver's license (Queens, New York) and his actual state of residence (New Jersey) both require a firearms license to purchase firearms. However, law enforcement officers enjoy special firearms privileges and generally are not subject to the same requirements as non-law enforcement officers. See, e.g., N.Y. Penal Law 265.20 (police officers and peace officers exempt from laws prohibiting possession of firearms and other weapons); N.J. Code of Crim. Conduct 2C:39-6 (listing exemptions from firearms regulations for law enforcement officers).

Notably, one of the firearms dealers from whom the defendant purchased firearms maintained in his sales records copies of the defendant's police ID card, presumably in lieu of a state issued firearms license. In addition, it is reasonable to conclude that the defendant identified himself as a police officer and wore his uniform to deflect attention from his unlawful activity, as firearms dealers normally would be expected to trust a law enforcement customer to comply with firearms regulations. In the government's view, such use of the defendant's status as a police officer, as described above, "significantly facilitated the commission or concealment of the offense" in that it allowed the defendant to acquire firearms readily and at a discount, thus increasing his profits, while at the same time reducing his chances of getting caught. Accordingly, the government respectfully submits that the enhancement applies.

B. The Defendant's Attempt to Provide Assistance Is Relevant, But Not "Substantial"

The government acknowledges that the defendant made an effort to influence his brother, Ariel, to surrender. To that end, the defendant participated in telephone calls with other family members to encourage them to urge his brother to take responsibility for his role in the charged crime. While this assistance was "genuine," it is a stretch to characterize it as "substantial," as the defendant seeks to do. (Def. Mem. at 2). Moreover, it was entirely unsuccessful. The defendant's efforts may be relevant to the Court's analysis, however, and the government does not object to the Court considering the defendant's efforts to assist the government in connection with his sentencing.

C. Statutory Sentencing Factors

Any crime perpetrated by a police officer is troubling because such conduct erodes the public's trust in law enforcement. The crime at issue here is particularly serious

in that it involved a conspiracy among two individuals who were sworn to uphold the law -- the defendant and his brother Wilfredo. While the unlicensed export of weapons is not itself violent in nature, the offense conduct here is of particular concern because the export laws are designed to protect U.S. interests by subjecting the proliferation of dangerous weapons to State Department oversight. Here, the defendant ran a smuggling pipeline from the United States to the Philippines, and the weapons he trafficked were some of the most powerful small arms in the world. The Barrett rife, for example, is used by U.S. Special Forces for extreme long range sniper operations, and the .50 caliber BMG cartridge it fires is capable of penetration armor and disabling vehicles and aircraft. The FN pistols and carbines he exported are compact semi-automatic weapons that use high-capacity magazines and fire a round that was specifically designed to penetrate body armor on the battlefield. While the government is not aware of the specific end uses or customers for these dangerous weapons, that is precisely the problem: they are now in unregulated international commerce.

       Moreover, the defendant's conduct implicates the fundamental tension between the constitutional liberties enjoyed by law-abiding Americans relating to the possession of firearms, and the important responsibilities commensurate with both firearms ownership and consistency in the rule of law as it applies to, and is enforced by, the police. To maintain the public trust, there should be no double standard. The sentence imposed must give the public confidence that the rule of law applies with equal force to police and non-police alike.

       The defendant's dereliction of his duty as a police officer does not, however, render irrelevant all other of his characteristics. As set forth in the defendant's submission and its attachments, he is a husband and father with a history of public service. His letters of support speak well of his character. In addition, to the government's knowledge, he has no other criminal history, and has fully accepted responsibility for his conduct, as is reflected in his Guidelines calculation. Also, the defendant has complied with the conditions of his pre-sentence release, and it appears from his recent conduct that he likely would maintain gainful employment upon his ultimate release.

       Considering all of the factors under Title 18, United States Code, Section 3553(a), including the need to promote respect for the law, protect the public and deter future like conduct, a Guidelines range sentence of between 57 and 71 months' imprisonment would not be unreasonable in this case. However, given the defendant's good faith efforts to assist the government after his arrest, a non-Guidelines range sentence also may be sufficient to meet the ends of justice in this case, and the government therefore does not object to a downward variance, the extent of which is left to the sound discretion of the District Court.

6

## V. Conclusion

For the reasons set forth above, the government respectfully requests that the Court impose a sentence at or near the applicable advisory Guidelines range but does not oppose a modest downward variance to account for the defendant's efforts to assist the government after his arrest.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:    /s/
Seth D. DuCharme
Samuel P. Nitze
Assistant U.S. Attorneys
(718) 254-7000

cc    Michelle A. Gelernt, Esq.
      Shayna Bryant, U.S. Probation